*Thomas E. Willoughby (TW 4452)*
*James A. Saville, Jr. (JS-4835)*
HILL RIVKINS & HAYDEN LLP
*Attorneys for Plaintiffs*
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

***UNITED STATES DISTRICT COURT***
***SOUTHERN DISTRICT OF NEW YORK***
-----------------------------------------------------------------------X

CHEM ONE LTD., COMMERICAL METALS
COMPANY;  A.H.A. INTERNATIONAL CO.,
LTD., IKE TRADING CO., LTD., HUNTER
DOUGLAS METALS, INC., NATIONAL OILWELL
L.P., TEXAS WYOMING DRILLING, INC., GRAPHITE
ELECTRODES SALES COMPANY, INC., THE BABCOK &
WILCOX COMPANY, WESTCO SYSTEMS, INC.,
TORAY ENGINEERING CO., LTD., THE CRISPIN
COMPANY, ITOCHU BUILDING PRODUCTS
CO., INC., BLUELINX CORPORATION, KURT ORBAN
PARTNERS LLC, BSTC GROUP INC.,
FOSTER WHEELER NORTH AMERICA CORP.; WEGO
CHEMICAL & MINERAL CORP.; SUEWON POONGRYUK
MACHINERY CO., LTD.; GENERAL ELECTRIC COMPANY and
WINTERSUN GROUP(USA) INC.

Index No.:
**05 CIV. 4261 (LAP)**

Plaintiffs,

- against -

M/V "RICKMERS GENOA" and M/V "SUN CROSS;"
their engines, boilers, etc., in rem; RICKMERS GENOA
SCHIFFAHRTSGES mbH & Cie. KG; RICKMERS-
LINIE GmbH & Cie. KG; UNITED SHIPPING
SERVICES, INC.; SESCO GROUP INC.; CS MARINE
CO. LTD.; SUNWOO MERCHANT MARINE CO., LTD.;
JA SUNG MARINE CO., LTD.; ESM GROUP, INC.;
PUDONG TRANS USA INC.; ESM (TIANJIN)
CO., LTD., ESM II, INC. and ESM II LP in personam,

*SEVENTH AMENDED*
*COMPLAINT*

Defendants.

-----------------------------------------------------------------------X

The plaintiffs herein, by their attorneys, HILL RIVKINS & HAYDEN LLP, complaining of the above named vessels and defendants, allege upon information and belief:

## *JURISDICTION AND THE PARTIES*

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     At and during all times hereinafter mentioned, plaintiffs were and now are corporations or other legal entities having interests in connection with certain bills of lading with principal offices and places of business stated in Schedule A hereto annexed and by this reference made a part hereof.  Plaintiffs Foster Wheeler North America Corp.; Wego Chemical & Mineral Corp.; and Suewon Poongryuk Machinery Co., Ltd. are hereinafter referred to as "ESM Plaintiffs."

3.     At and during all times hereinafter mentioned, all the defendants with the exception of ESM Group, Inc. ("ESMG), ESM (Tianjin) Co., Ltd. ("ESMT"), ESM II INC., ESM II, LP,  M/V SUN CROSS and CS Marine Co., Ltd. (hereinafter "Carrier Defendants") were and now are corporations or other business entities with offices and places of business stated in Schedule A, and were and now are engaged in business as common carriers of merchandise by water for hire, and owned, operated, managed, chartered and controlled defendant M/V RICKMERS GENOA which now is or will be within the jurisdiction of this Court during the pendency of this action.

4.     At and during all times hereinafter mentioned, ESM Group, Inc., ESM II INC., ESM II, LP and ESM (Tianjin) Co., Ltd. (hereinafter "Super Sul Defendants"), were and now are corporations or other business and were and now are sister and/or related companies entities

with offices and places of business stated in Schedule A and were, respectively, the buyer/receiver and seller/shipper of a cargo of 600 bags of "Super Sul Mg. 89" which magnesium product exploded and set the M/V RICKMERS GENOA and plaintiffs' cargoes ablaze during the course of the pertinent voyage.  ESMT is a subsidiary, sister company and/or related company to ESMG.

5.      Super Sul Mg 89 is primarily composed of magnesium and prone to generate dangerous and flammable gas.

6.      Third-Party Defendants did not provide any warning as to the inherently dangerous nature of this Super Sul Mg 89 cargo.

7.      At and during all times hereinafter mentioned, Ja Sung Marine Co., Ltd., CS Marine Co. Ltd. and Sunwoo Merchant Marine Co., Ltd. were and now are companies or other business entities with offices and places of business stated in Schedule A and were and now are engaged in the business of common carriers by water for hire and owned, operated, managed, chartered and/or controlled defendant M/V SUN CROSS.

### AS AND FOR A
### FIRST CAUSE OF ACTION
### AGAINST THE CARRIER DEFENDANTS
### ASSERTED BY ALL PLAINTIFFS WITH
### THE EXCEPTION OF THE ESM PLAINTIFFS

8.      Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 7 as if set forth herein at length.

9.      On or about the dates and at the ports of shipment stated in Schedule A, there were delivered to the M/V RICKMERS GENOA and Carrier Defendants in good order and condition the shipments described in Schedule A, which the M/V RICKMERS GENOA and

Carrier Defendants received, accepted and agreed to transport for certain consideration to the ports of destination stated in Schedule A.

10.     Thereafter, M/V RICKMERS GENOA and Carrier Defendants arrived at the ports of destination described in Schedule A and the cargo was delivered damaged and/or is subject to a salvor's and general average lien and the payments related thereto as a result of a casualty at sea.  In addition, Carrier Defendants wrongfully and without cause barred certain plaintiffs from surveying their cargoes after the said vessel collided with and sank the M/V SUN CROSS in the Yellow Sea on March 7, 2005.  Carrier Defendants then tortiously and improperly demanded security for general average contribution for the containers within which certain plaintiffs had stuffed their cargoes when the correct course of action would have been to have sought such security from the owners/lessors/leasees of said containers.

11.     By reason of the premises, the M/V RICKMERS GENOA was unseaworthy and Carrier Defendants breached, failed and violated their duties to the plaintiffs as common carriers by water for hire and/or bailees and caused additional aggravated damages above and beyond the invoice value of the cargo, as set forth above and were negligent and otherwise at fault.

12.     Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in schedule A and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

13.     Plaintiffs have duly performed all duties and obligations on their part to be performed.

4

14.    By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $10,170,128.65.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST THE SUPER SUL DEFENDANTS
ASSERTED BY ALL PLAINTIFFS
(Strict Liability)**

15.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 14 as if set forth herein at length.

16.    Super Sul Defendants were the owners, manufacturers, shippers, consignees, receivers, and/or buyers of Super Sul Mg 89 cargo delivered by the Super Sul Defendants and/or their agents to the M/V RICKMERS GENOA or other Carrier Defendants who loaded and stowed it aboard the vessel on the subject voyage.

17.    Super Sul Defendants were obligated to adequately warn and/or inform plaintiffs and the Carrier Defendants as to the inherently dangerous nature of the Super Sul Mg 89 cargo.

18.    Super Sul Defendants placed this cargo of Super Sul Mg 89 into the stream of commerce without providing any warning of its inherently dangerous nature.

19.    In failing to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes the Super Sul defendants, as shippers and/or consignees, strictly liable for all of the damages and expenses directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304 and any and all other applicable law.

5

20.     As a result of Super Sul Defendants' failure to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous nature of the cargo and ensure that the cargo was adequately packed, the Super Sul Mg 89 did generate flammable gas resulting in an explosion, fire and damage to the RICKMERS GENOA and plaintiffs' cargo on or about March 8, 2005, and further causing the plaintiffs to suffer damage in the nature of general average and salvage liens and payments related thereto.

21.     Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in schedule A and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

22.     Plaintiffs have duly performed all duties and obligations on their part to be performed.

23.     By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $10,522,379.65.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST THE SUPER SUL DEFENDANTS
### ASSERTED BY ALL PLAINTIFFS
### (Failure To Warn)

24.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 23 as if set forth herein at length.

25.     Super Sul Defendants as the owners, manufacturers, shippers, consignees, receivers, and/or buyers of Super Sul Mg 89 cargo were aware, or should have been aware, of

the inherently dangerous nature of the Super Sul Mg 89 cargo prior to delivery to the Carrier Defendants and the M/V RICKMERS GENOA.

26.    Super Sul Defendants were obligated to adequately warn and/or inform plaintiffs and Carrier Defendants as to the inherently dangerous nature of the Super Sul Mg 89 cargo.

27.    Super Sul defendants placed this cargo of Super Sul Mg 89 into the stream of commerce without providing any warning of its inherently dangerous nature.

28.    In failing to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes the Super Sul defendants, as shippers and/or consignees, strictly liable for all of the damages and expenses directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304 and any and all other applicable law.

29.    As a result of Super Sul Defendants' failure to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous nature of the cargo and ensure that the cargo was adequately packed, the Super Sul Mg 89 did generate flammable gas resulting in an explosion, fire and damage to the RICKMERS GENOA and plaintiffs' cargo on or about March 8, 2005, and further causing the plaintiffs to suffer damage in the nature of general average and salvage liens and payments related thereto.

30.    Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in schedule A and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

7

31.     Plaintiffs have duly performed all duties and obligations on their part to be performed.

32.     By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $10,522,379.65.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST THE SUPER SUL DEFENDANTS
### ASSERTED BY ALL PLAINTIFFS
### (Negligence)

33.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 32 as if set forth herein at length.

34.     Super Sul Defendants as the owners, manufacturers, shippers, consignees, receivers, and/or buyers of Super Sul Mg 89 cargo were obligated and duty-bound, regardless of knowledge, to adequately warn and/or inform plaintiffs and the Carrier Defendants as to the inherently dangerous nature of the Super Sul Mg 89 cargo and properly package, brace and stow the cargo prior to carriage.

35.     Super Sul Defendants were obligated to adequately warn and/or inform plaintiffs and Carrier Defendants as to the inherently dangerous nature of the Super Sul Mg 89 cargo.

36.     Super Sul defendants placed this cargo of Super Sul Mg 89 into the stream of commerce without providing any warning of its inherently dangerous nature.

37.     In failing to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes the Super Sul defendants, as shippers and/or consignees, strictly liable for all of the damages and expenses directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304

8

and any and all other applicable law.

38.     As a result of Super Sul Defendants' failure to warn and/or inform plaintiffs and/or Carrier Defendants of the inherently dangerous nature of the cargo and ensure that the cargo was adequately packed, braced and stowed and their own negligence the Super Sul Mg 89 did generate flammable gas resulting in an explosion, fire and damage to the RICKMERS GENOA and plaintiffs' cargo on or about March 8, 2005, and further causing the plaintiffs to suffer damage in the nature of general average and salvage liens and payments related thereto.

39.     Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in schedule A and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

40.     Plaintiffs have duly performed all duties and obligations on their part to be performed.

41.     By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $10,522,379.65.

***AS AND FOR A FIFTH CAUSE OF ACTION
AGAINST THE M/V SUN CROSS, JA SUNG
MARINE CO., LTD.,  CS MARINE AND
SUNWOO MERCHANT MARINE
ASSERTED BY ALL PLAINTIFFS
WITH THE EXCEPTION OF THE ESM PLAINTIFFS***

42.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 41 as if set forth herein at length.

9

43.    On or about March 7, 2004, defendants JA Sung Marine Co., Ltd., CS Marine Co., Ltd. and Sunwoo Merchant Marine Co., Ltd., owned, operated, chartered, managed, controlled and/or crewed the M/V SUN CROSS which vessel was in transit in the South China Sea.

44.    As a result of the unseaworthiness of the M/V SUN CROSS and the negligence and incompetence of JA Sung Marine Co., Ltd., CS Marine Co., Ltd., Sunwoo Merchant Marine Co., Ltd., the crew and the master of the M/V SUN CROSS, the M/V RICKMERS GENOA, which carried plaintiffs' cargo, and the M/V SUN CROSS collided and plaintiffs' cargo damaged. As a result of the collision the M/V SUN CROSS sank.

45.    By reason of the premises, the M/V SUN CROSS was unseaworthy and defendants JA Sung Marine Co., Ltd., CS Marine Co., Ltd. and Sunwoo Merchant Marine Co., Ltd. breached, failed and violated their duties and obligations to plaintiffs, were negligent and otherwise at fault.

46.    Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in schedule A and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

47.    Plaintiffs have duly performed all duties and obligations on their part to be performed.

48.    By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount

10

of $10,170,128.65.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AGAINST THE SUPER SUL DEFENDANTS
### ASSERTED BY ALL PLAINTIFFS

49.      Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 41 as if set forth herein at length.

50.      ESMG originally produced magnesium desulphurization reagents at its own production facilities in the United States.

51.      ESMT was created by ESMG for the sole purpose of taking over the production of magnesium desulphurization reagents, e.g. Super Sul Mg 89.

52.      Among other things, ESMG directed ESMT on the process to produce said magnesium desulphurization reagents by providing the chemical formula and technical knowledge.

53.      ESMG provided ESMT with the necessary machinery and training for the production of magnesium desulphurization reagents.

54.      At all material times ESMG controlled and continues to control the manner in which ESMT operates.

55.      At all material times, ESMG instructed ESMT as to when and how much Super Sul Mg 89 was to be produced and shipped back to ESMG.

56.      Although ESMT ordered the necessary raw materials, in all but a few instances, ESMG directly paid the Chinese raw material suppliers for said raw materials.

57.      In addition, ESMG had the power to direct ESMT to alter its Material Safety Data Sheet ("MSDS") for magnesium granules; limited ESMT's ability to sell products to other

buyers; and controlled the content and distribution of MSDS's by ESMT to third-parties.

58.    At all material times, ESMG and ESMT did not operate as arms-length contracting parties.

59.    In view of the foregoing, and other factual circumstances, there existed, and continues to exist, such a relationship between ESMG and ESMT so that ESMG is a principal to ESMT, which acts as agent to ESMG in fulfilling ESMT's sole purpose of producing magnesium desulphurization reagents for ESMG.

60.    ESMG, as principal and/or undisclosed principal of its agent ESMT, implied or in fact, is liable for the loss and/or damage was caused the directly or proximately, by the negligence, breach of contract (express or implied), breach of warranty (express or implied), and/or other wrongful act or omission of ESMT.

61.    Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in schedule A and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

62.    Plaintiffs have duly performed all duties and obligations on their part to be performed.

63.    By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $10,522,379.65.

### AS AND FOR AN SEVENTH CAUSE OF ACTION
### ASSERTED BY ALL PLAINTIFFS
### *(Piercing the Corporate Veil)*

64.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 as if set forth herein at length.

65.     ESMT is a wholly-owned subsidiary of ESMG.

66.     ESMG and ESMT have common and/or overlapping directors, so much so that at times ESMT's board was constituted entirely by certain directors of ESMG.

67.     ESMT is inadequately capitalized as, among other things, it lacks liability insurance coverage, does not own any real estate, and does not normally have sufficient funds of its own to purchase the raw materials needed to produce the magnesium desulphurization reagents for ESMG.

68.     ESMT operates at little to no profit.

69.     ESMG provided financing to ESMT in the form of registrations money, start up capital, and machinery in order for ESMT to start its operation.  ESMG continues to materially support the operation of ESMT.

70.     In practice, ESMG uses ESMT's property and assets as its own, as among other things, ESMG designed ESMT's plant to manufacture Super Sul Mg 89 and supplied the capital; developed the specifications for Super Sul Mg 89; gave the formula for Super Sul Mg 89 to ESMT's production facilities and procedures.

71.     ESMG caused the incorporation of ESMT.

72.     At all material times, ESMG made and continues to makes decisions for ESMT, as among other things, ESMG instructs ESMT as to when and how much magnesium

desulphurization reagent is to be produced; what bags should be used as packaging; what coatings are to be used; whether an MSDS should be issued to third-parties; and who may receive ESMT's production.

73.    In addition, ESMT's directors do not act independently in the interest of ESMT, but instead act in interest of ESMG, and the relationship between ESMG and ESMT, including related contracts, is more favorable to ESMG than ESMT.

74.    Given the foregoing, ESMG and ESMT should be held jointly and severally liable to Plaintiffs as a matter of law and in the interests of justice.

75.    As such, the corporate veils of ESMG and ESMT should be pierced so as to hold them jointly and severally liable, either on an identity or instrumentality theory.

76.    Plaintiffs were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in schedule A and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

77.    Plaintiffs have duly performed all duties and obligations on their part to be performed.

78.    By reason of the premises, plaintiffs have sustained damages as nearly as same can now be determined no part of which has been paid although duly demanded in the amount of $10,522,379.65.

*W H E R E F O R E*, plaintiff prays:

1.       That process in due form of law according to the practice of this Court may issue against defendants.

2.       That if defendants cannot be found within this District, that all of their property within this District, as shall be described in the affidavit, be attached in the sum set forth in this Second Amended Complaint, with interest and costs.

3.       That a decree be entered in favor of plaintiffs and against the M/V RICKMERS GENOA and the Carrier Defendants as the first cause of action in the amount of plaintiffs' damages, together with interest and costs.

4.       That a decree be entered in favor of plaintiffs against ESM Group Inc. and ESM (Tianjin) Co., Ltd. on the second, third, fourth, sixth and seventh causes of action in the amount of plaintiffs' damages, together with interest and costs.

5.       That a decree be entered in favor of plaintiffs against the M/V SUN CROSS, JA Sung Marine Co., Ltd., CS Marine Co., Ltd. and Sunwoo Merchant Marine Co., Ltd. on the fifth cause of action in the amount of plaintiffs' damages, together with interest and costs.

6.       That a decree be entered in favor of plaintiffs against the Carrier Defendants adjudging that the declaration of general average by the Carrier Defendants was improper and, therefore, plaintiffs are not required to contribute in general average and salvage and are entitled to a refund of any payments heretofore made.

7.       That process in due form of law according to the practice of this Court may issue against the aforesaid named vessel.

8. Plaintiff further prays for such other, further and different relief as to this Court may

seem just and proper in the premises.

Dated: New York, New York
      April 17, 2009

                         HILL RIVKINS & HAYDEN LLP
                         Attorneys for Plaintiffs

By: _____
                         James A. Saville, Jr. (JS-4835)
                         Thomas E. Willoughby (TW 4452)

                         45 Broadway, Suite 1500
                         New York, New York 10006
                         (212) 669-0600

28921\PLEADINGS Sixth Amended Complaint

## SCHEDULE A

**Plaintiffs:**     Chem One Ltd.
8017 Pinemont Drive
Houston, TX 77040-6519

Commercial Metals Company
9370 Wallisville Road
Suite 100
Houston, TX  77013

A.H.A. International Co., Ltd.
306 Tunxl Road
Hefei, Anhui
China

IKE Trading Co., Ltd.
8905 S.W. Nimbus Ave.
Suite 190
Beaverton, OR  97008

Hunter Douglas Metals, Inc.
Roxboro, North Carolina

National Oilwell L.P.
500 Industrial Blvd.
Sugarland, TX  77478

Texas Wyoming Drilling, Inc.
Post Office Box 41343
Houston, Texas  77241-1343

Graphite Electrodes Sales Company, Inc.
5628 Clifford Circle
Birmingham, AL  35210

The Babcok & Wilcox Company
20 S. Van Buren Avenue
Barbeton, OH  44203

Westco Systems, Inc.
7396 Lowell Blvd.
Westminster, CO  80030

17

Toray Engineering Co., Ltd.
Nihonbashi, Muromachi Bldg. 3-3-16
Hongokurcho, Chunko
Tokyo, Japan 103

The Crispin Company
2069 Lubback
Houston, TX  77007

Itochu Building Products Co., Inc.
660 White Plains Road
Tarrytown, NY  10591

Bluelinx Corporation
4300 Wildwood Parkway
Atlanta, GA 30339

Kurt Orban Partners LLC
63 Bouet Road, Suite 432
San Manteo, CA  04402

BSTC Group Inc.
75 Union Ave
Rutherford, NJ  07070

Foster Wheeler North America Corp.
Perryville Corporate Park
Clinton, NJ 08809

Wego Chemical & Mineral Corp.
239 Great Neck Road
Great Neck, NY 11021

Suewon Poongryuk Machinery Co. Ltd.
791-2 Kwanyang-Dong
Donyan-gu, Anyang, Kyungki-do
Korea

General Electric Company
3135 Easton Turnpike
Fairfield, CT 06828

Wintersun Group(USA) Inc.
3100 E. Cedar Street, Suite 15
Ontario, CA 91761

**Defendants:**   Rickmers Genoa Schiffahrtsges. mbH & Cie KG
c/o Rickmers Reederei GmbH & Cie KG
Neumuhleu 19
Hamburg, Germany 22763

and c/o Fowler Rodriguez & Chalos LLP
366 Main Street
Port Washington, NY 11050
Attn.: Eugene J. O'Connor, Esq.

Rickmers Linie GmbH & Cie. KG
Nuemuhelu 19
Hamburg, Germany  22763

and c/o Fowler Rodriguez & Chalos LLP
366 Main Street
Port Washington, NY 11050
Attn.: Eugene J. O'Connor, Esq.

United Shipping Services, Inc.
2321 Highbury Avenue, #51
Los Angeles, CA 90032

and c/o Cichanowicz, Callan, Keane, Vengrow & Textor, LLP
61 Broadway, Suite 3000
New York, NY 10006
Attn.: Michael DeCharles, Esq.

SESCO Group Inc.
19 E. Live Oak Avenue
Arcadia, CA  91006-5200

CS MARINE CO. LTD.
8F Ocean B/D
76-13 4GA, Chunggang Dong, Chung Gu
Busan, Korea

and c/o Freehill Hogan & Mahar
80 Pine Street
New York, NY
Attn.: James L. Ross, Esq.

ESM GROUP, INC.
300 Corporate Parkway – 261N
Amherst, New York 14226

and c/o CT Corporation System   (Registered Agent for accepting-
111 Eighth Avenue                         service of process)
New York, New York 10011

and c/o Burke & Parson
100 Park Avenue
New York, NY  10017-5537
Attn.: Raymond J. Burke, Jr., Esq.

ESM II INC.
300 Corporate Parkway – 261N
Amherst, New York 14226

ESM II LP
300 Corporate Parkway – 261N
Amherst, New York 14226

SUNWOO MERCHANT MARINE CO., LTD.
3F Dongwon Building
128-27 Dangju-dong
Chongno-gu Seoul 110-071
South Korea

ESM (TIANJIN) CO., LTD.
28-H Yun Xiang Building, 72-72#
X1 Kang Road
He Ping District
Tianjin, Peoples Republic of China

Pudong Trans USA Inc.
9660 Fair Drive #328
El Monk, CA  91731

*Thomas E. Willoughby (TW 4452)*
*James A. Saville, Jr. (JS-4835)*
HILL RIVKINS & HAYDEN LLP
*Attorneys for Plaintiffs*

45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

CHEM ONE LTD., COMMERICAL METALS
COMPANY; A.H.A. INTERNATIONAL CO.,
LTD., IKE TRADING CO., LTD., HUNTER
DOUGLAS METALS, INC., NATIONAL OILWELL
L.P., TEXAS WYOMING DRILLING, INC., GRAPHITE
ELECTRODES SALES COMPANY, INC., THE BABCOK &
WILCOX COMPANY, WESTCO SYSTEMS, INC.,
TORAY ENGINEERING CO., LTD., THE CRISPIN
COMPANY, ITOCHU BUILDING PRODUCTS CO., INC.,
KURT ORBAN PARTNERS LLC, BSTC GROUP INC.;
FOSTER WHEELER NORTH AMERICA CORP.; WEGO
CHEMICAL & MINERAL CORP.; SUEWON POONGRYUK
MACHINERY CO., LTD.; GENERAL ELECTRIC COMPANY and
WINTERSUN GROUP(USA) INC.

Index No.:
**05 CIV. 4261 (LAP)**

                        Plaintiffs,

   - against -                                    **AFFIDAVIT OF**
                                                  **SERVICE BY MAIL**

M/V "RICKMERS GENOA" and M/V "SUN CROSS;"
their engines, boilers, etc., in rem; RICKMERS GENOA
SCHIFFAHRTSGES mbH & Cie. KG; RICKMERS-
LINIE GmbH & Cie. KG; UNITED SHIPPING
SERVICES, INC.; SESCO GROUP INC.; CS MARINE
CO. LTD.; SUNWOO MERCHANT MARINE CO., LTD.;
JA SUNG MARINE CO., LTD.; ESM GROUP, INC.;
PUDONG TRANS USA INC.; ESM (TIANJIN)
CO.. LTD., ESM II, INC. and ESM II LP in personam,

                        Defendants.
-------------------------------------------------------------------X

**STATE OF NEW YORK**
                           **SS.:**
**COUNTY OF NEW YORK**

The undersigned, being duly sworn, says:  I am not a party to the action, am over 18 years of age and reside in the State of New York.

On April 17, 2009, I served a true copy of the annexed Sixth Supplemental Summons, Sixth Amended Complaint and Sixth Amended Rule 7.1 Statement.

☐     Service       by depositing a true copy thereof enclosed in a post-paid wrapper in an
        By Mail            official depository under the exclusive care and custody of the U.S.
Postal

                          Service within New York State, addressed to each of the following
                          persons at the last known address set forth after each name:

Chalos O'Connor & Duffy
366 Main Street
Port Washington, NY 11050
Attention:  Eugene J. O'Connor, Esq./Timothy Semenoro, Esq.

Burke & Parsons
100 Park Avenue
New York, NY  10017-5537
Attention:  Raymond J. Burke, Jr., Esq.  /
            Christopher H. Dillon, Esq.

Badiak & Will LLP
106 3rd Street
Mineola, NY  11501
Attention:  James Paul Krauzlis, Esq.

Nicoletti Hornig Campise & Sweeney
Wall Street Plaza
88 Pine Street
New York, NY  10005
Attention:  Lawrence C. Glynn,  Esq.

Graham Miller Neandross Mullin &
  Roonan
2350 Broadway – Suite 215A
New York, NY  10024
Attention:  Jeffrey L. Neandross, Esq.


Pudong Trans USA Inc.
9660 Fair Drive #328
El Monk, CA  91731


Maryann Castaldo


Sworn to before me this 17th
day of  April, 2009.


Notary Public

ROBERT BLUM
Notary Public, State Of New York
No.01BL4914091
Qualified In Kings County
Certificate Filed In New York County
Commission Expires December 7,