```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X          05 Civ. 4261 (LAP)
In re M/V RICKMERS GENOA      :          05 Civ. 6226 (LAP)
LITIGATION                    :          05 Civ. 8841 (LAP)
------------------------------X          05 Civ. 9472 (LAP)
THIS DOCUMENT RELATES TO:     :
ALL ACTIONS                   :          Amended Memorandum & Order
------------------------------X
```

LORETTA A. PRESKA, Chief United States District Judge:

      This order resolves a dispute about the terms of a bill of lading that provides for the limitation of liability of a carrier engaged to transport goods.  The case arises out of a maritime casualty resulting from a collision and explosion on a New Jersey-bound vessel transporting, among other things, granulated magnesium ordered by Defendant ESM Group, Inc. ("ESM Group") from its subsidiary in China, ESM (Tianjin) Co. Ltd. ("ESMT").  The goods were shipped on the M/V RICKMERS GENOA, which is a defendant along with her owners, a group hereinafter referred to as the "Rickmers interests."  For a fuller description of the facts, readers can look to prior opinions describing the casualty.  E.g., In re M/V Rickmers Genoa Litig. (Rickmers I), 622 F. Supp. 2d 56, 59 (S.D.N.Y. 2009).

      The casualty engendered suits against the Rickmers interests by parties unrelated to ESM Group with cargo aboard the vessel (the "cargo interests").  The Rickmers interests also sued ESM Group and ESMT, as consignee and shipper, respectively, in a third-party action, alleging that they were liable because

magnesium can explode when put in contact with water.  Cross-claims and counterclaims abounded.[1]

Prior to this motion, the Court decided motions for summary judgment regarding claims that ESM Group was liable for the casualty and, separately, that ESM Group or its subsidiary (whichever was the "shipper") insufficiently informed the vessel's owners about the nature of the cargo.  With certain exceptions not relevant here, the Court rejected these claims.  In re M/V Rickmers Genoa Litig. (Rickmers III), No. 05 Civ. 4261, 2010 WL 4446080, at *15 (S.D.N.Y. Nov. 4, 2010) (nature of cargo); Rickmers I, 622 F. Supp. 2d at 59 (ESM not liable except, potentially, as alter-ego of subsidiary), amended by In re M/V Rickmers Genoa Litig. (Rickmers II), 643 F. Supp. 2d 554, 555 (S.D.N.Y. 2009) (stating that federal maritime law governs actions but adhering to holding).  These decisions are pending on appeal.  See 28 U.S.C. § 1292(a)(3) (providing for piecemeal interlocutory appeals in certain admiralty cases).  As a result of the travel of the case, and as the parties have apprised the Court by letter (dkt. no. 188 in No. 05 Civ. 4261), the claims by those parties who had cargo on board the vessel against the

---

[1] In one action, No 05 Civ. 6226, ESM Group was sued as an original defendant, against which the Rickmers interests filed a cross-claim.  That action has since been dismissed.

vessel and its owners (and presumably among one another) are, essentially, all that remain.

Now, the Rickmers interests and ESM Group (along with ESMT) have cross-moved for partial summary judgment[2] on the issue of what provision of the bill of lading governs the Rickmers interests' limitation of liability on claims for loss or damage of cargo.  This is important because what provision governs dictates what country's law governs: that of either the United States or Germany.  Each country's regime provides for a different limitation of a carrier's liability.  United States law, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1304(5), provides for a lower limitation of liability than does German law, which applies the amendments to the Hague Rules of 1924 (the "Hague-Visby Rules").  Kreta Shipping, S.A. v. Preussag Int'l Steel Corp., 192 F.3d 41, 46 & n.5 (2d Cir. 1999).  Thus, application of the Hague-Visby Rules would result in a larger recovery against the carrier.  See id.  The parties hope that the resolution of this legal issue will have a domino effect as they try to settle.

The parties do not dispute any material facts.  ESMT had arranged for an intermediary (a "Non-Vessel Owning Common Carrier" or "NVOCC") to transport the cargo to ESM Group, and

---

[2] Due to this posture, and for ease of exposition, the Court refers to ESM Group and ESMT together as "ESM Group."

the intermediary issued a bill of lading to ESMT, evidencing the terms of the contract for carriage of the goods. (ESM Group Rule 56.1 Statement ¶¶ 2-3.) The only relevant fact for purposes of this motion is the language of the Rickmers-Linie bill of lading issued to the NVOCC because it governs the Rickmers interests' limitation of liability. Two clauses are at issue here. Clause 7(2) of the Rickmers Bill of Lading provides, in relevant part:[3]

> Notwithstanding any of the foregoing to the contrary, in the event that suit is brought in a court in the United States of America and such court, contrary to Clause 25, accepts jurisdiction, then the Carriage of Goods by Sea Act (COGSA) shall be compulsorily applicable to this contract of carriage if this Bill of Lading covers a shipment to or from the United States. . . . The Carrier's maximum liability in respect to the Goods shall not exceed USD 500 per package or, where the Goods are not shipped in packages, USD 500 per customary freight unit unless the nature and value of the Goods has been declared by the Merchant and inserted in writing, on the face of the Bill of Lading and said Merchant shall have paid the applicable ad valorem freight rate set forth in Carrier's Tariff.

(Declaration of Michael A. Teichmann dated Feb. 18, 2011 ("Teichmann Decl.") Ex. A. Cl. 7(2).) Clause 25 provides, in relevant part:

---

[3] Clause 7(2) was "inadvertently misquoted" in certain submissions, a situation not noticed until briefing was complete. Letter from counsel to the Court dated Mar. 18, 2011. The parties agree that their arguments remain the same notwithstanding this clerical error and that the Court should decide the motion "based on the actual language in the Bill of Lading." Id.

4

> Except as otherwise provided specifically herein any claim or dispute arising under this Bill of Lading shall be governed by the law of the Federal Republic of Germany and determined in the Hamburg courts to the exclusion of the jurisdiction of the courts of any other place.  In case the Carrier intends to sue the Merchant the Carrier also has the option to file a suit at the Merchant's place of business.

(Id. Cl. 25.)  A third clause, which is not in dispute because the casualty occurred between loading and discharge, provides that the Hague-Visby Rules govern the carrier's liability when "loss or damage has occurred between the time of loading of the Goods by the Carrier at the Port of Loading and the time of discharge by the Carrier at the Port of Discharge."  (Id. Cl. 5(1)(a).)

Given the lack of factual dispute here, the case is ripe for summary judgment.  "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  In a contract dispute, summary judgment is appropriate only if the language of the contract is unambiguous.  Am. Home Assurance Co. v. Hapag-Lloyd Container Line, GmbH (Hapag-Lloyd), 446 F.3d 313, 316 (2d Cir. 2011).  On cross-motions for summary judgment, the Court applies the rule that "each party's motion must be examined on its own merits," with all reasonable inferences drawn against the

5

movant.  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

The Rickmers interests argue that the terms of the bill of lading are unambiguous.  They say that Clause 7(2) provides for the application of COGSA when a U.S. court hears a controversy over this agreement.  They maintain that this clause contemplates Clause 25 (a mandatory forum selection clause) and provides for the contingency that COGSA applies if Clause 25 is disregarded.  Although ESM Group also believes the bill of lading to be unambiguous, it disagrees with this interpretation.  It says that Clause 25, in conjunction with Clause 5(1)(a), provides the default rule – application of the Hague-Visby Rules under German law – and that Clause 7(2) applies only when a U.S. Court assumed jurisdiction "contrary to" Clause 25.  Specifically, it says that Clause 7(2) has a "contrariness" requirement, meaning that it only applies when the U.S. court declines to enforce Clause 25 and, in effect, wrests jurisdiction from a German court over the argument that the German forum is the appropriate one.  ESM Group says in the alternative that the language is vague and should be interpreted against the Rickmers interests, as they drafted it.

The parties agree that whatever the legal regime that sets the amount of the limitation of liability, that limitation is applicable to the Rickmers interests' liability here.  See

6

Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 33, 36 (2004) (cargo owners' recovery limited to liability limitation agreed to by NVOCC and carrier); see also Hawkspere Shipping Co. v. Intamex, S.A., 330 F.3d 225, 233 (4th Cir. 2003) ("Where the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice." (internal quotation marks and alterations omitted)).  What regime the parties elected to govern liability is a question of contract interpretation.  In admiralty, federal common law governs this question.  See Hapag-Lloyd, 446 F.3d at 316; Rickmers II, 643 F. Supp. 2d at 555-57.  "If the court determines that the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and those terms may be the basis for summary judgment." Hapag-Lloyd, 446 F.3d at 316 (internal quotation marks omitted). Contract language "is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  Id. (internal quotation marks omitted).  In short, contracts are construed "by their terms and consistent with the intent of the parties."  Id. (quoting Kirby, 543 U.S. at 31).

This contract is unambiguous. There is no doubt that the bill of lading contains an enforceable mandatory forum selection clause requiring resolution of any dispute to be in Germany applying German law. Am. Home Assurance Co. v. M/V JAAMI, No. 06 Civ. 287, 2007 WL 1040347, at *2 (S.D.N.Y. Apr. 4, 2007) (enforcing the same clause at issue here as a mandatory forum selection clause). Clause 25 states that "any claim . . . arising under this bill of lading shall be governed by the law of the Federal Republic of Germany and determined in the Hamburg courts to the exclusion of the courts of any other place." (Teichmann Decl. Ex. A.) This clause, along with Clause 5(1)(a), provides for the Hague-Visby Rules to apply unless a specific exception applies.

Clause 7(2) is a specific exception. It says that if "suit is brought in a [U.S. court] and such court, contrary to Clause 25, accepts jurisdiction, then [COGSA] shall" apply if the bill of lading covers a shipment to or from the United States. (Id.) The question under consideration is whether this exception applies to the claims against the Rickmers interests for loss or damage to the cargo.[4] Although the Rickmers

---

[4] Prior decisions in this case have not involved the liability of the Rickmers interests. Instead, they have involved the liability of ESM Group or ESMT, as third-party defendant. See Rickmers I, 622 F. Supp. 2d at 64; Rickmers II, 643 F. Supp. 2d at 554; Rickmers III, 2010 WL 4446080, at *1. Here, the Court (cont'd . . .)

8

interests argue that Clause 7(2) applies whenever a claim for damage to cargo shipped to or from the United States is litigated in a U.S. court, that argument is too broad.  Clause 7(2) applies only to some, not all, claims litigated in a U.S. court for damage to United States-bound or -shipped cargo.  The Court explains.

Clause 7(2) provides for the application of COGSA only when a U.S. court accepts jurisdiction "contrary to Clause 25." The Court accepts ESM Group's proposition that this phrase has meaning.  The Court must give effect to all of the provisions of a contract, and an interpretation that renders a term superfluous or meaningless is avoided if possible. LaSalle Bank N.A. v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005).  "Contrary" means "diametrically different," "opposite in character or nature," or "mutually opposed."  Webster's Third New International Dictionary 495 (1986); see 3 Oxford English Dictionary 844 (2d ed. 1989) (stating that etymology of "contrary" is from the Latin "contrarius" meaning "opposite, hostile").  "Contrary" means that the relationship between the clauses is more "opposed" than another word, such as "irrespective" or "regardless," would imply.  "Contrary"

---

is reviewing the limitation of liability vis-à-vis the Rickmers interests, the defendants and carrier, for loss or damage of cargo claims filed against the Rickmers interests.

suggests an "antagonistic" nature between the Court's taking jurisdiction over Clause 25.  3 Oxford English Dictionary 844 (stating that contrary is used with the sense of "repugnant" or "antagonistic").  Its use here therefore requires a U.S. court to take jurisdiction in opposition to, or antagonistic to, or hostile to, Clause 25.  Construing the same language contained in Clause 7(2) in a bill of lading drafted by another carrier, this Court stated that this clause "merely provides for a contingency in the event that some court does not enforce the forum selection clause."  M/V JAAMI, 2007 WL 1040347, at *2.[5]  In effect, a U.S. court must be presented with an argument that the forum selection clause, Clause 25, applies, then, for whatever reason, decline to enforce it.[6]  After doing so, the U.S. court would take jurisdiction "contrary to Clause 25."

Clause 7(2) does not apply more broadly, as the Rickmers interests urge.  They say that anytime a U.S. court takes jurisdiction, jurisdiction is "contrary to Clause 25."  Under the Rickmers interests' interpretation, "contrary to Clause 25" is meaningless and can be removed from the contract,

---

[5] In that case, the parties had agreed upon the application of COGSA.

[6] It is important to note that this provision is not a jurisdictional statute but, rather, a contract term, which the parties must ask to have applied.  Here, no party sought the application of this forum selection clause.

10

making it read, in effect, "in the event that suit is brought in a court in the United States of America and such court accepts jurisdiction, then the Carriage of Goods by Sea Act (COGSA) shall [apply]." The Court cannot read a phrase out of the contract.

The case the Rickmers interests point to as most supportive of their position involves a very similar mandatory forum selection and choice-of-law clause; in that case the Court applied COGSA to the limit the carrier's liability. Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, No. 04 Civ. 5605, 2004 WL 1616379, at *4 (S.D.N.Y. July 19, 2004), aff'd on other grounds, 446 F.3d 313 (2d Cir. 2006). However, the forum selection clause in that case did not include the word "contrary." Id.; Rickmers Reply Br. at 15. This fact makes a difference.[7] Likewise, the bills of lading in Royal & Sun Alliance Ins. PLC v. Ocean World Lines, 572 F. Supp. 2d 379, 385 (S.D.N.Y. 2008) and A.P. Moller-Maersk A/S v. Ocean Express Miami, 590 F. Supp. 2d 526, 531 (S.D.N.Y. 2008) – the two other cases the Rickmers interests rely upon – did not contain similar

---

[7] Additionally, it appears that no party in American Home raised the issue raised here, and the Court of Appeals affirmed on the basis of a "Himalaya" clause, which is not implicated here. See Hapag-Lloyd, 446 F.3d at 317.

11

"contrary to" language.[8]  (Second Declaration of Timothy Semenoro ("Semenoro Decl."), dated Mar. 16, 2011, Exs. 2-3.)  Given the differences in the contractual language, the Court must give "contrary to" some meaning.

Moreover, the Rickmers interests submitted copies of other bills of lading litigated in these cases.  A review of those bills of lading shows a more obvious intent to apply COGSA to limit the carrier's liability whenever a shipment was to or from a port in the United States.  For example, another bill of lading states "Notwithstanding the preceding provision, in the event that this Bill covers shipments to or from the United States, then COGSA shall be compulsorily applicable . . . ." (Id. at Ex. 2, Cl. 7(1).)  It goes on to limit the carrier's liability to $500 – the COGSA minimum – in the event that the bill of lading "covers the goods moving to or from a port of final destination in the United States."  (Id. Cl. 23(3).) There is no requirement that a U.S. court assume jurisdiction "contrary to" another forum selection clause in order that COGSA apply.

---

[8] Similarly, the Rickmers interests' reliance on Stolt Tank Containers, Inc. v. Evergreen Marine Corp., 962 F.2d 276 (2d Cir. 1992), is misplaced because that case dealt with whether "a bill of lading's $500 per package liability limitation provision was enforceable against a non-party shipper to the bill of lading." Rickmers II, 643 F. Supp. 2d at 558.

The Court recognizes that the Rickmers interests are defendants and third-party plaintiffs here, meaning that the plaintiffs made the initial forum choice. Thus, for the Rickmers interests to avail themselves of COGSA under this interpretation would require them to invoke a forum selection clause that may disadvantage them.[9] But the defendant drafted the bill of lading. The principles animating the canon of contra preforentem have an application here. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996) (stating that courts must "construe ambiguous contract terms against the drafter"); see also Caterpillar, Inc. v. M/V KARONGA, No. 06 Civ. 8236, 2008 WL 1849771, at *8 (S.D.N.Y. Apr. 23, 2008) (citing cases applying "Hague-Visby Rules in lieu of COGSA"). If the Rickmers interests wanted the COGSA limitation of liability to apply whenever a shipment is bound to the United States, they could have written the bill of lading that way, as other carriers appear to have done.[10]

---

[9] The Court speaks only of the limitation of liability regime and makes no comment regarding other substantive or procedural rules that may be more or less favorable.

[10] For example, the same clause in a Hapag-Lloyd bill of lading states, "Notwithstanding the foregoing, where the Carriage is to or from a port or final destination in the United States, the Carrier's limitation of liability in respect of the Goods shall not exceed U.S. $500.00 per package . . . ." (Semenoro Decl. Ex. 1, Ex. B.) A parallel clause in an Ocean World Lines bill of lading states, "Notwithstanding the preceding provision, in (cont'd . . .)

Bringing these principles to bear on this case, the Court concludes that it did not accept jurisdiction "contrary to Clause 25" because <u>no party</u> asked this Court to enforce Clause 25.[11] The Court therefore did not fail to "enforce the forum selection clause," <u>M/V JAAMI</u>, 2007 WL 1040347, at *2, and trigger the application of COGSA as directed in this bill of lading.

The bill of lading provides for a default rule: the Hague-Visby Rules govern unless an exception applies.

---

the event that this Bill covers shipments to or from the United States, then COGSA shall be compulsorily applicable . . . ." (<u>Id.</u> Ex. 2, Ex. FF.) Likewise, a Maersk Line bill of lading states, "Notwithstanding anything provided for in clause 6.1 and subject to clause 18, the liability of the Carrier in respect of such loss or damage shall be determined: . . . (b) in case of shipments to or from the United States of America by the provisions of US COGSA if the loss or damage is known to have occurred during Carriage by sea to or from the USA . . . ." (<u>Id.</u> Ex. 3, Ex. B, at 5-6.) Finally, an Evergreen bill of lading states, ""In the event this Bill covers the goods moving to or from a port of final destination in the United States, the Carrier's limitation of liability in respect to the Goods shall in no event exceed U.S. Dollars $500 per package . . . ." (<u>Id.</u> Ex. 5.) None of these other bills of lading contains a provision hinging the application of COGSA on a U.S. court's jurisdiction or whether a U.S court takes jurisdiction "contrary to" another clause. They select the application of COGSA when a shipment is to or from the United States.

[11] Other cases in this district interpreting the same exact language have been faced with situations where one party seeks to enforce the forum selection clause. <u>E.g.</u>, <u>M/V JAAMI</u>, 2007 WL 1040347, at *1; <u>Jockey Int'l, Inc. v. M/V LEVERKUSEN EXPRESS</u>, 217 F. Supp. 2d 447, 449 n.1, 455 (S.D.N.Y. 2002); <u>Reed & Barton Corp. v. M/V Tokio Exp.</u>, No. 98 Civ. 1079, 1999 WL 92608, at *2-3 (S.D.N.Y. Feb. 22, 1999).

(Teichmann Decl. Ex. A, Cl. 5(1)(a), 25.)  The only relevant exception is that in Clause 7(2).  Because that clause does not apply, the Hague-Visby Rules apply.  Moreover, specifically with respect to ESM Group, it was arguably included in this litigation <u>consistent with</u> Clause 25 because it was added as a third-party defendant by the carrier, which had the option to sue the "Merchant" (defined to include ESM Group) in its place of business (here, New York).[12]  (<u>Id.</u> Ex. A, Cl. 25 ("In case the Carrier intends to sue the Merchant the Carrier also has the option to file a suit at the Merchant's place of business."); <u>see</u> <u>id.</u> Ex. A, Cl. 1.)

   Nothing in COGSA precludes this result.  "The relevant question . . . is whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees."  <u>Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer</u>, 515 U.S. 528, 539 (1995); <u>see</u> <u>M/V JAAMI</u>, 2007 WL 1040347, at *1-2.  The Hague-Visby Rules provide for obligations

---

[12] In letter briefs submitted to the Court, both the Rickmers interests and ESM Group stated that all of the parties intended for the Rickmers interests to allege claims against, and thereby include in this litigation, ESM Group as third-party defendants. ESM Group Letter Brief dated Apr. 29, 2011, at 4; Rickmers Letter Brief dated Apr. 29, 2011, at 1-2.  Nevertheless, the relevant claims are for loss of or damage to cargo, which implicate the Rickmers interests as a defendant, be those claims ESM Group's (asserted as counterclaims) or the other shippers' (asserted as primary claims).

15

to the cargo owner that exceed COGSA's minimum, so nothing in COGSA precludes the application of those rules.

CONCLUSION

Because the Court did not assume jurisdiction "contrary to Clause 25," Clause 7(2) does not apply. Therefore, COGSA does not govern the Rickmers interests' limitation of liability of the claims for loss or damage of cargo here. The Hague-Visby Rules limit the Rickmers interests' liability. ESM Group's cross-motion for partial summary judgment [dkt. no. 201 in 05 Civ. 4261] is GRANTED, and the Rickmers interests' motion for partial summary judgment [dkt. no. 194 in 05 Civ. 4261] is DENIED. This memorandum opinion replaces and supersedes the memorandum opinion filed on May 25, 2011. [dkt. no. 216 in 05 Civ. 4261]

SO ORDERED.

Dated:   New York, New York
         May 26, 2011

*[signature]*
LORETTA A. PRESKA
Chief U.S. District Judge